**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiff Laura Grant*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAURA GRANT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GRUNS NUTRITION, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Laura Grant ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Grüns Nutrition, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and all similarly situated consumers who purchased Grüns Superfoods Greens Gummies marketed as sugar free (collectively, the "Products").[1]

2. Defendant prominently labels the front principal display panel of each Product "Sugar Free" (the "Sugar Free Representations"). However, unbeknownst to reasonable consumers, the Products contain sugar in the form of allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal and California labeling standards. It is not present in trace amounts: Defendant's labels quantify 8 grams of allulose per labeled serving for each Product.

3. The Products repeatedly represent that they are "Sugar Free" on their principal display panels. These outside-panel statements expressly represent that sugar is absent from the Products and are nutrient-content claims under 21 C.F.R. § 101.13(a), (b), (b)(1), and (c). "Sugar free" is a term specifically defined by § 101.60(c)(1), which permits the claim only if, among other requirements, the food contains less than 0.5 gram of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving. Defendant's labels identify one 20-gram pack as a serving and quantify 8 grams of allulose per serving. Allulose is a free monosaccharide and therefore a sugar under § 101.9(c)(6)(ii). The Products consequently cannot lawfully bear the Sugar Free Representations. Accordingly, Plaintiff brings claims against Defendant for violations of: (1) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (2) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.; (3) materially similar state consumer-protection statutes; (4) express warranty law; and (5) unjust enrichment.

---

[1] The Products are: (1) Grüns Superfoods Greens Gummies — Original Sugar-Free ("Original"), in all of its serving size variations; and (2) Grüns Superfoods Greens Gummies — Bello Banana Berry Sugar-Free ("Bello Banana Berry"), in all of its serving size variations.

## JURISDICTION AND DIVISIONAL ASSIGNMENT

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the proposed Classes include more than 100 members, the aggregate claims of the proposed Classes exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes is a citizen of a state different from Defendant.

5. The Court has personal jurisdiction over Defendant because Defendant labels, sells, and distributes the Products throughout California, including this District, and has sufficient minimum contacts with California. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to this action, including Plaintiff's purchases, occurred in this District.

## PARTIES

6. Plaintiff Laura Grant is a citizen of California residing in Los Gatos, California. Plaintiff purchased Grüns Superfoods Greens Gummies — Original Sugar-Free for her personal use directly from Defendant through gruns.co. On September 10, 2025, Plaintiff enrolled in Defendant's automatic-delivery program, scheduled approximately every twelve weeks. Defendant charged Plaintiff $184.78, exclusive of shipping and taxes, for each shipment on September 10, 2025, November 29, 2025, February 21, 2026, and May 16, 2026, the final charge. Before enrolling and allowing the subsequent deliveries, Plaintiff saw and relied on Defendant's prominent front-label representation that the Products were "Sugar Free." Based on that representation, Plaintiff reasonably believed that the Products contained no sugar. The representations were part of the basis of Plaintiff's bargains, and she would not have purchased the Products on the same terms had she known they were untrue. Plaintiff also paid a price premium because of Defendant's false and misleading Sugar Free Representations but did not receive the benefit of her bargain because the Products contain 8 grams of allulose per serving. Had Plaintiff known the truth, she would not have enrolled, would have canceled the automatic deliveries sooner, or would have paid substantially less for the Products.

7. Plaintiff remains interested in purchasing dietary supplements that truly are sugar free. However, she cannot know for certain whether Defendant's false labeling has been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the

Sugar Free Representations, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that the Products' labeling is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food products. Neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

8. Defendant Gruns Nutrition, Inc. is a Delaware corporation with its principal place of business and headquarters in Beaverton, Oregon. Defendant formulates, labels, distributes, and/or sells the Products throughout California and the United States, including through gruns.co and other online retailers, including Walmart, Target, and Amazon, and grocery stores across the country.

## FACTUAL ALLEGATIONS

### A. Consumers Seek Out and Pay More for Products That Contain No Sugar

9. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugar.[2]

10. That demand accords with widespread public-health guidance. The 2025–2030 Dietary Guidelines for Americans state that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars.[3] The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake and states that limiting them further to 5 percent or less may provide additional health benefits.[4] The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[5]

---

[2] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.

[3] U.S. Department of Health and Human Services & U.S. Department of Agriculture, Dietary Guidelines for Americans, 2025–2030, at 5 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf

[4] World Health Organization, Healthy Diet (Jan. 26, 2026), https://www.who.int/news-room/fact-sheets/detail/healthy-diet

[5] American Heart Association, Added Sugars, https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.

11. Food and beverage manufacturers are aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free," "no sugar," and "zero sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

12. Defendant has capitalized on that demand. It sells the Products containing allulose — a monosaccharide sugar — while representing them as "Sugar Free." Defendant thereby obtained an unfair competitive advantage over competitors that accurately label comparable sweetened dietary supplements.

**B. <u>Defendant's Sugar Free Representations and Warranties</u>**

13. Defendant prominently represents on the front principal display panels of the Products that they are "Sugar Free." These statements are referred to herein as the "Sugar Free Representations." Below is an illustrative sampling of the Products and the Sugar Free Representations:

## 01 Original

FULL FRONT LABEL




FULL BACK LABEL




OUTER-BAG SUGAR FREE




DAILY-PACK SUGAR FREE




8 g ALLULOSE — BACK LABEL



02 **Bello Banana Berry**

FULL FRONT LABEL




FULL BACK LABEL




OUTER-BAG SUGAR FREE




DAILY-PACK SUGAR FREE




8 g ALLULOSE — BACK LABEL



14. The Sugar Free Representations communicate to reasonable consumers that the Products contain no sugar. That is the plain and ordinary meaning of "Sugar Free."

15. The Sugar Free Representations are absolute, objective, and quantitative claims concerning whether the Products contain sugar. Those claims are demonstrably false: Defendant's labels disclose that each Product contains 8 grams of allulose — a sugar — per labeled serving.

16. The Products' information panels reinforce, rather than cure, the materially misleading impression created by the Sugar Free Representations. The Supplement Facts panels declare less than 0.5 gram of Total Sugars and 0 grams of Added Sugars; the Other Ingredients statements identify Allulose as the first ingredient but do not state that allulose is a free monosaccharide or sugar; and the labels quantify 8 grams of allulose per serving without explaining that it is sugar.

**C. <u>Allulose Is a Sugar</u>**

17. Allulose is a sugar.

18. Chemically, allulose is a monosaccharide. It is the C-3 epimer of D-fructose, meaning that allulose and fructose have the same molecular formula and connectivity but differ in the spatial orientation of a hydroxyl group at the third carbon. "D-allulose, a C-3 epimer of D-fructose, is a rare monosaccharide used as a food ingredient or a sweetener."[6] Allulose is accordingly "a rare sugar," and "a monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[7]

19. Allulose is not merely a sugar as a matter of chemical classification. It is used as one. Allulose has "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[8] The food science literature describes allulose and other rare sugars as "monosaccharides

[6] Han-Joo Maeng *et al.*, Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol, 8 Foods art. 448, at 1 (2019), https://doi.org/10.3390/foods8100448.

[7] Youngji Han et al., Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial, 10 Nutrients art. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.

[8] Maeng *et al.*, supra note 6, at 2.

with sweetness similar to those as caloric sugars, but [with] low caloric values," which "are now widely used as sugar substitutes."[9]

20. Because allulose is less sweet than table sugar, it is used in gram-scale quantities as a bulk sweetener. High-intensity sweeteners such as saccharin, aspartame, acesulfame potassium, neotame, sucralose, and advantame are approximately 200 to 20,000 times as sweet as sucrose.[10] By contrast, allulose has approximately 70% of sucrose's sweetness and, as the Products' own labels show, is used in large quantities as a bulk sweetener.[11]

21. Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."[12] It is used as "a partial replacement of added sugars."[13] Allulose is "widely regarded as a promising substitute for sucrose"—that is, a substitute for table sugar, and one that is itself a sugar.[14]

22. In the Products, allulose is quantified as 8 grams per labeled serving. That amount constitutes 40% of each 20-gram serving.

23. The Food and Drug Administration ("FDA") identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the

---

[9] *Maeng et al.*, *supra* note 6, at 9–10.

[10] U.S. Food & Drug Administration, Aspartame and Other Sweeteners in Food, https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food (last visited Aug. 18, 2026).

[11] Mengting Tao, Wenli Zhang & Wanmeng Mu, D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry, 73 J. Agric. & Food Chem. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.

[12] *Han et al.*, supra note 7, at 10.

[13] *Id.*

[14] Wenli Zhang *et al.*, D-Allulose, a Versatile Rare Sugar: Recent Biotechnological Advances and Challenges, 63 Critical Revs. Food Sci. & Nutrition 5661, 5661 (2023) (published online Dec. 29, 2021), https://doi.org/10.1080/10408398.2021.2023091.

substance.[15] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and does not exclude allulose. 21 C.F.R. § 101.9(c)(6)(ii).

24. The Calorie Control Council likewise describes allulose under the heading "Allulose is a Naturally Occurring Sugar" and states that "[a] monosaccharide, or simple sugar, allulose is absorbed by the body, but not metabolized, so it is nearly calorie-free."[16]

25. Defendant's Products are better-for-you dietary supplements that contain a sugar identified on the label only by a name that consumers do not recognize as a sugar.

**D. The Products Violate the FDA Nutrient Content Regulations**

26. Congress empowered FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. The FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

27. FDA's nutrient-content-claim regulations expressly apply to both conventional foods and dietary supplements. 21 C.F.R. § 101.13(a). A claim that expressly or implicitly characterizes the level of a nutrient required in nutrition labeling under § 101.36 may not be made unless it complies with § 101.13 and the applicable regulations in subpart D. Id. § 101.13(b). Information appearing within the Supplement Facts panel is not itself a nutrient-content claim, but such information stated elsewhere on the label is subject to the nutrient-content-claim regulations. Id. § 101.13(c). The challenged Sugar Free Representations are expressed nutrient-content claims because they appear on the Products' principal display panels, outside the Supplement Facts panel, and directly state that sugar is absent from the Products. *Id.* § 101.13(b)(1), (c).

28. Section 101.60 provides that a claim about a food's sugar content may be made only if the claim uses a term defined in that section in accordance with its definition, complies with the general requirements in § 101.13, and appears on a food labeled in accordance with § 101.36, as

[15] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).

[16] Calorie Control Council, Allulose, https://caloriecontrol.org/ingredients/sweeteners/allulose/ (last visited Aug. 11, 2026).

applicable. 21 C.F.R. § 101.60(a)(1)–(3). "Sugar free" is among the absence-of-sugar terms specifically defined by § 101.60(c)(1).

29. Section 101.60(c)(1) provides that a food may not be labeled "sugar free" unless each of the following conditions is satisfied:

> (i) The food contains less than 0.5 gram of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving;
>
> (ii) The food contains no ingredient that is a sugar or that consumers generally understand to contain sugars, unless that ingredient is followed in the ingredient statement by an asterisk referring to a statement that it "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar"; and
>
> (iii) The food satisfies the regulation's calorie-claim condition or the term is immediately accompanied, each time it is used, by the statement "not a reduced calorie food," "not a low calorie food," or "not for weight control."

21 C.F.R. § 101.60(c)(1)(i)–(iii).

30. These requirements are conjunctive; each one must be satisfied.

31. The Products do not satisfy subsection (i). Section 101.9(c)(6)(ii) defines Total Sugars as "the sum of all free mono- and disaccharides." Allulose is a free monosaccharide and falls squarely within that definition. Eight grams is sixteen times 0.5 gram and cannot satisfy § 101.60(c)(1)(i)'s requirement that the Product contain less than 0.5 gram per reference amount customarily consumed and per labeled serving.

32. FDA's nonbinding allulose guidance does not alter either failure. The guidance announces enforcement discretion, pending rulemaking, for excluding allulose from the gram amounts of Total Sugars and Added Sugars declared on Nutrition and Supplement Facts labels. The Products' Supplement Facts panels declare less than 0.5 gram of Total Sugars only because

Defendant excludes the 8 grams of allulose from that declaration in reliance on that guidance. The guidance did not amend § 101.9(c)(6)(ii), does not address § 101.60(c)(1), and does not authorize an outside-panel "Sugar Free" claim. The panel figure therefore does not reflect the Products' actual sugar content and does not establish compliance with § 101.60(c)(1)(i).

33. The Products independently fail subsection (ii). Each label lists "Allulose" in the Other Ingredients statement without an asterisk referring to any statement that it adds a trivial, negligible, or dietarily insignificant amount of sugar.

34. Because the Products bear false, misleading, and impermissible outside-panel nutrient-content claims, they are misbranded under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.12(b), 101.13(a), (b), (b)(1), and (c), 101.36(b)(1)(i), and 101.60(a)(1)–(3), (c)(1).

**E. <u>Defendant's Conduct Violates California's Food Labeling Laws</u>**

35. Defendant's labeling, including the package-front Sugar Free Representations, and its distribution and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a).

36. Defendant's labeling, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient-content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

37. Defendant's labeling, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food);

(c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

38. Because the Products bear "Sugar Free" nutrient-content claims despite containing 8 grams of allulose per serving, the Products are misbranded and falsely advertised under California law, and Defendant's labeling, distribution, and sale of the Products are unlawful.

**F. <u>Reasonable Consumers Cannot Detect Defendant's Deception</u>**

39. Reasonable consumers have no reason to search the side or back panels when presented with the conspicuous front-panel representation that the Products are "Sugar Free." But even if they did, the Supplement Facts panels declare less than 0.5 gram of Total Sugars and 0 grams of Added Sugars. The Other Ingredients statements identify Allulose but do not state that allulose is a free monosaccharide or sugar. The labels quantify 8 grams of allulose per serving but do not explain that it is sugar.

40. Consumers are also not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling claims are truthful and not misleading.

**G. <u>Defendant Knew the Sugar Free Representations Were False</u>**

41. Defendant knew, or should have known, that the Sugar Free Representations were false or misleading when it labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a free monosaccharide and sugar; (c) the labels

quantify 8 grams of allulose per serving; (d) the labels nevertheless represent that the Products are Sugar Free; (e) the ingredient statements list Allulose without the asterisk and qualifying statement required by § 101.60(c)(1)(ii); (f) reasonable consumers would rely on the Sugar Free Representations when purchasing; (g) consumers would not receive the represented benefit of the bargain; and (h) the Sugar Free Representations enabled Defendant to charge a premium for the Products.

42. Defendant's own labels quantify 8 grams of allulose per serving and identify Allulose as the first ingredient under Other Ingredients. Defendant thus knows both the identity and the quantity of the allulose in the Products, yet prints "Sugar Free" on the Products' principal display panels. That treatment demonstrates that Defendant understood the Products' composition and elected to represent them as free of sugar.

43. Defendant could have stopped using the Sugar Free Representations, accurately qualified them, or ensured that they were true, but chose not to.

**H. <u>Defendant's Sugar Free Representations Injured Plaintiff and the Classes</u>**

44. Defendant concealed or failed to disclose material facts about the Products, including: (a) that allulose is a free monosaccharide; (b) that the Products contain 8 grams of allulose per serving; (c) that the Products do not comply with pertinent FDA regulations; (d) that the Products do not conform to the Sugar Free Representations; and (e) that the Products are misbranded under federal and California law as a result of the Sugar Free Representations.

45. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium for the Products; (c) were deprived of the benefit of their bargains; and (d) with respect to Plaintiff and the California Subclass, purchased misbranded Products that could not lawfully have been sold because they violate the FDA and California's Sherman Law regulations.

46. Accordingly, Plaintiff and Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

### I. Plaintiff Lacks an Adequate Remedy at Law

47. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy her inability to rely on Defendant's Sugar Free Representations when deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Sugar Free Representations can address that prospective harm.

48. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiff and Class Members paid and the value of the Products as received, which may not be coextensive with damages.

49. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL carries a four-year limitations period, which may reach purchases not fully remediable under other causes of action.

50. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted here. The FAL and UCL prohibit Defendant's fraudulent package-labeling scheme. Plaintiff's warranty and common-law claims are more limited, focusing on duties arising from Defendant's Sugar Free Representations at the point of purchase. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action on behalf of herself and all others similarly situated under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined below (collectively, the "Classes"):

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.
>
> **Multi-State Consumer Protection Subclass:** All persons who, during the maximum period permitted by law, purchased one or more of the Products for personal use in a state with a consumer-protection statute materially similar to the statutes identified herein.

**Multi-State Warranty Subclass:** All persons who, during the maximum period permitted by law, purchased one or more of the Products for personal use in a state with express-warranty law materially similar to the laws identified herein**.**

**California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

52. The Classes do not include: (1) Defendant or its officers or directors; (2) the Judge or Magistrate Judge assigned to this action; (3) the assigned Judge's or Magistrate Judge's staff and family; or (4) Plaintiff's counsel or Defendant's counsel.

53. Plaintiff reserves the right to amend the class definitions and add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

54. **Community of Interest:** There is a well-defined community of interest among members of the Classes, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

55. **Numerosity:** While the exact number of Class Members is unknown to Plaintiff and can be determined only through discovery, upon information and belief, they number at least in the thousands, and joinder is impracticable. Class Members may be notified through Defendant's and third-party retailers' distribution and sales records and by publication.

56. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual members. These common legal and factual questions include, but are not limited to:

(a) Whether allulose is a free monosaccharide and sugar;

(b) Whether the Products contain 8 grams of allulose per serving and fail the governing conditions for the Sugar Free Representations, including 21 C.F.R. §§ 101.13 and 101.60(c)(1);

(c) Whether reasonable consumers would understand Defendant's representations and warranties concerning the Products to be untrue or misleading;

(d) Whether Defendant's representations and warranties were material;

(e) Whether the Products are misbranded under federal law and, with respect to the California Subclass, California law;

(f) Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(g) Whether Plaintiff and Class Members suffered damages as a result of Defendant's actions and the amount of those damages;

(h) Whether Plaintiff and Class Members are entitled to statutory damages; and

(i) Whether Plaintiff and Class Members are entitled to attorneys' fees and costs.

57. With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

58. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff was exposed to Defendant's Sugar Free Representations, purchased a Product in reliance on them, and suffered the same type of economic loss.

59. **Adequacy:** Plaintiff will fairly and adequately represent and protect the Classes' interests as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests adverse to the Classes, is committed to vigorous prosecution, and has retained skilled and experienced counsel.

60. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the asserted claims under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation make it economically infeasible for Class Members to seek redress outside a class action. Even if Class Members could afford individual litigation, the burden on the courts would be substantial. Individualized litigation would risk varying or contradictory judgments and magnify delay and expense through repeated trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or all issues presents fewer management difficulties, conserves party and judicial resources, and protects each Class

Member's rights. Plaintiff anticipates no difficulty managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer-protection laws, and separate actions could subject Defendant to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

61. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

62. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

63. Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unlawful, unfair, and fraudulent business practices.

64. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is unlawful if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows a person who has suffered injury in fact and lost money or property to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204.

65. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 *et seq.*

66. Defendant violated the UCL's proscription against unlawful business practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; the CLRA, Cal. Civ. Code § 1750 et seq.; and the Sherman Law, including Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770. Through the Sherman Law's adoption of federal food-labeling requirements, Defendant also violated the parallel standards

in 21 U.S.C. § 343(a)(1), (r)(1)(A) and 21 C.F.R. §§ 101.9(c)(6)(ii), 101.12(b), 101.13(a), (b), (b)(1), and (c), 101.36(b)(1)(i), and 101.60(a)(1)–(3), (c)(1).

67. Defendant also violated the UCL's proscription against unfair business practices. Defendant's acts, omissions, misrepresentations, practices, and nondisclosures are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any asserted benefit. There is no utility in representing that dietary supplements containing 8 grams of allulose per serving are Sugar Free. Defendant's false and misleading representations also disadvantage competitors that either do not make similar claims or formulate their products to conform to them.

68. Plaintiff and California Subclass Members suffered substantial injury by buying Products they would not have purchased absent Defendant's unlawful, fraudulent, and unfair labeling, packaging, and omissions concerning allulose.

69. The gravity of Defendant's conduct outweighs any justification, particularly considering lawful alternatives. Defendant could have removed the Sugar Free Representations, accurately qualified them, or reformulated the Products. Its conduct offends established public policy and substantially injures Plaintiff and California Subclass Members.

70. Plaintiff and California Subclass Members could not reasonably have avoided their injury or known that the prominent labeling was inaccurate. Consumers lack specialized knowledge to identify allulose as a free monosaccharide and are not required to reconcile the front-panel promise with the Supplement Facts and ingredient information.

71. Under California Business & Professions Code § 17203, Plaintiff and California Subclass Members seek restitution, injunctive relief, attorneys' fees, and all other relief the Court deems proper.

**COUNT II**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass)**

72. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

73. Plaintiff brings this claim on behalf of herself and the California Subclass against Defendant.

74. Defendant's acts and practices have deceived or are likely to deceive California Subclass Members and the public. Defendant represents on the Products' front labels that they are "Sugar Free," even though each Product contains 8 grams of allulose per serving.

75. Defendant has disseminated uniform package labeling regarding the Products throughout California and the United States. The labeling was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers.

76. In making and disseminating these statements, Defendant knew, or should have known, its package labeling was untrue or misleading. Plaintiff Grant and California Subclass Members based their purchasing decisions on the materially false Sugar Free Representations and were injured in fact and lost money or property as a result.

77. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 et seq.

78. Plaintiff and California Subclass Members seek restitution, injunctive relief, attorneys' fees, and all other relief the Court deems proper.

**COUNT III**
**Violation of Consumer Protection Statutes**
**(On Behalf of Plaintiff and the Multi-State Consumer Protection Subclass)**

79. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

80. Plaintiff brings this claim individually and on behalf of the Multi-State Consumer Protection Subclass against Defendant.[17]

81. Defendant represents that the Products are "Sugar Free," even though each Product contains 8 grams of allulose per serving. The foregoing deceptive acts and practices were directed at consumers.

82. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

83. As a result of Defendant's deceptive practices, Plaintiff and Multi-State Consumer Protection Subclass Members suffered economic injury because they would not have purchased the Products or would have paid less had they known the Products did not conform to the Sugar Free Representations.

84. Plaintiff and Multi-State Consumer Protection Subclass Members seek actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs as allowed by applicable law.

---

[17] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.50.471 et seq.; Ariz. Rev. Stat. §§ 44-1521 et seq.; Ark. Code § 4-88-101 et seq.; Cal. Bus. & Prof. Code § 17200 et seq.; Cal. Civ. Code § 1750 et seq.; Colo. Rev. Stat. Ann. § 6-1-101 et seq.; Conn. Gen. Stat. § 42-110a et seq.; 6 Del. Code § 2513 et seq.; D.C. Code § 28-3901 et seq.; Fla. Stat. Ann. § 501.201 et seq.; Ga. Code Ann. § 10-1-390 et seq.; Haw. Rev. Stat. § 480-2 et seq.; Idaho Code Ann. § 48-601 et seq.; 815 ILCS 505/1 et seq.; Ind. Code § 24-5-0.5-2 et seq.; Kan. Stat. Ann. § 50-623 et seq.; Ky. Rev. Stat. Ann. § 367.110 et seq.; La. Rev. Stat. § 51:1401 et seq.; Me. Rev. Stat. tit. 5, § 207 et seq.; Md. Code Ann., Com. Law § 13-301 et seq.; Mass. Gen. Laws ch. 93A et seq.; Mich. Comp. Laws § 445.901 et seq.; Minn. Stat. § 325F et seq.; Mo. Rev. Stat. § 407 et seq.; Neb. Rev. Stat. §§ 59-1601 et seq.; Nev. Rev. Stat. § 41.600 et seq.; N.H. Rev. Stat. § 358-A:1 et seq.; N.J. Stat. Ann. § 56:8 et seq.; N.M. Stat. Ann. § 57-12-1 et seq.; N.Y. Gen. Bus. Law § 349 et seq.; N.C. Gen. Stat. § 75-1.1 et seq.; N.D. Cent. Code § 51-15 et seq.; Ohio Rev. Code § 1345.01 et seq.; Okla. Stat. tit. 15, § 751 et seq.; Or. Rev. Stat. § 646.605 et seq.; 73 Pa. Stat. § 201-1 et seq.; R.I. Gen. Laws § 6-13.1-5.2(b); S.C. Code Ann. §§ 39-5-10 et seq.; S.D. Codified Laws § 37-24-1 et seq.; Tenn. Code Ann. § 47-18-101 et seq.; Tex. Bus. & Com. Code § 17.41 et seq.; Utah Code Ann. § 13-11-1 et seq.; 9 V.S.A. § 2451 et seq.; Va. Code §§ 59.1-196 et seq.; Wash. Rev. Code § 19.86.010 et seq.; W. Va. Code § 46A et seq.; Wis. Stat. § 100.18 et seq.; and Wyo. Stat. Ann. § 40-12-101 et seq.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Multi-State Warranty Subclass)**

85. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

86. Plaintiff brings this claim individually and on behalf of the Multi-State Warranty Subclass against Defendant.[18]

87. Defendant's express warranties formed part of the basis of the bargain when Plaintiff and Multi-State Warranty Subclass Members purchased the Products, including directly from Defendant through gruns.co and through authorized retailers.

88. The warranties include the promises and affirmations of fact Defendant made on the Products' packaging that the Products are "Sugar Free."

89. This labeling constitutes an express warranty and became part of the basis of the bargain for Plaintiff and Multi-State Warranty Subclass Members when they purchased the Products.

90. As set forth above, Defendant purports through its labeling and packaging to warrant that the Products are Sugar Free. Defendant breached its express warranties by selling Products that contain 8 grams of allulose per serving. The Products do not conform to Defendant's Sugar Free Representations and warranties.

91. Plaintiff and Multi-State Warranty Subclass Members would not have purchased the Products, or would have paid less for them, had they known the Products' true nature.

---

[18]While discovery may alter the following, Plaintiff asserts that the states with similar express warranty laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.02.313; Ariz. Rev. Stat. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2-313; Ga. Code § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; Kan. Stat. § 84-2-313; Ky. Rev. Stat. § 355.2-313; 11 Me. Rev. Stat. § 2-313; Mass. Gen. Laws ch. 106, § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Neb. U.C.C. § 2-313; Nev. Rev. Stat. § 104.2313; N.H. Rev. Stat. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; Ohio Rev. Code § 1302.26; Okla. Stat. tit. 12A, § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code § 8.2-313; Wash. Rev. Code § 62A.2-313; W. Va. Code § 46-2-313; and Wyo. Stat. Ann. § 34.1-2-313.

92. As a result, Defendant breached the express warranties made to the Multi-State Warranty Subclass. Plaintiff and all Multi-State Warranty Subclass Members suffered financial injury and are entitled to relief allowed by law.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

93. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

94. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under California law or, in the alternative, under the substantially similar laws of the states applicable to Nationwide Class Members.

95. To the extent required, Plaintiff asserts this cause of action in the alternative to her legal claims, as permitted by Federal Rule of Civil Procedure 8.

96. Defendant's false and misleading Sugar Free Representations caused Plaintiff and Class Members to pay a price premium for the Products.

97. Defendant thereby received a direct and unjust benefit at the expense of Plaintiff and Class Members.

98. Plaintiff and Class Members seek the return of that unjust benefit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23, naming Plaintiff as representative of the Classes, and appointing Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d) For damages available under the asserted causes of action, excluding CLRA damages unless and until properly added after satisfaction of Cal. Civ. Code § 1782;

e) For prejudgment interest on all amounts awarded;

f) For restitution to the extent permitted by applicable law;

g) For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling and selling the Products with the Sugar Free Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct;

h) For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit; and

i) For such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: August 26, 2026

Respectfully submitted,

**GUCOVSCHI LAW FIRM, PLLC.**

By: /s/ Adrian Gucovschi
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, 23rd Floor
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiff Laura Grant*